# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### Case No: 20-cr-20266-PCH



UNITED STATES OF AMERICA,

v.

RODERICK MICHAEL FLOWERS,

      Defendant.

_____/

### FACTUAL PROFFER

Defendant, Roderick Michael Flowers ("Defendant"), his counsel, and the United States of America agree that, had this case proceeded to trial, the United States would have proven the following facts beyond a reasonable doubt:

During the summer of 2020, a law enforcement confidential source ("CS") met several times with co-defendant Manny Hernandez to discuss activities related to narcotics trafficking and money laundering. The CS presented himself as a cocaine broker and money launderer affiliated with the Sinaloa Cartel. During those meetings, Hernandez explained to the CS that he had access to law enforcement officers who could assist them. On August 18, 2020, the CS asked if Hernandez's law enforcement contact could help the CS by identifying a license plate belonging to a person that owed the CS money. The CS provided Hernandez with the relevant license plate information. Hernandez reached out to the Defendant, an officer with the Miami-Dade Police Department ("MDPD"). The Defendant queried the license plate information in a law enforcement database, and then provided that information back to Hernandez, who eventually provided it to the CS.

On August 28, 2020, Hernandez told the CS he wanted to invest in a future load of cocaine. The parties discussed prices and options, and Hernandez eventually settled on investing in a multi-kilogram load of cocaine. During that same meeting, the CS asked if he could use Hernandez's law enforcement contacts to help escort the cocaine load. Hernandez said yes, but the CS would be

required to pay each cop $5,000, and Hernandez would need to be paid $10,000. Hernandez said that he would set up a meeting with the cops.

On September 9, 2020, the Defendant met with Hernandez, the CS, and an undercover officer ("UC") at Hernandez's business in Davie, Florida. The meeting had been arranged by Hernandez. During the meeting, the CS thanked the Defendant for running the license plate, which the Defendant acknowledged. Then, the CS and the Defendant discussed how the Defendant could help the CS by escorting the transport of the planned load of cocaine. The CS explained that the cocaine would be called "white girls" as a code word. The CS told the Defendant that he wanted to move product from one location to another, and that he needed an escort. The Defendant asked several questions regarding the logistics of the transport, and suggested that he had a friend – later identified as MDPD Officer Keith Edwards, Jr. – who could help with the cocaine escort. The Defendant explained that both he and Edwards had SWAT training, and so they were qualified to do the cocaine escort. The Defendant further explained that he and Edwards would help the CS create an alibi as to why he was in the area in case something went bad during the cocaine escort. Towards the end of the meeting, the CS provided $5,000 in cash, that was ultimately given to the Defendant at a subsequent meeting, for agreeing to escort the cocaine load, and the parties decided to set up another meeting involving Officer Edwards.

On September 14, 2020, the CS and UC met with Hernandez, the Defendant, and Officer Edwards. The meeting took place at Hernandez's office in Davie, Florida. At the beginning of the meeting, the CS asked if Edwards was a cop, and Edwards confirmed that he was. The CS then asked whether the Defendant and Edwards were partners, and the Defendant confirmed that they were. The CS asked the Defendant if Edwards knew everything, and Flowers responded yes, he did. The CS then told Edwards that the code word for the cocaine would be "white girls," which Edwards acknowledged. The CS explained that he would need Edwards to help with the transport of the "product" from point A to point B, and told Edwards that he would be paid for his services. According

2

to the CS, he had to move the "product" from Homestead to Aventura.  Edwards told the CS that he knew that what the CS did was illegal, but that it was none of his business.  Eventually, the parties agreed that the cocaine escort would take place on Wednesday, September 16, 2020.  During this meeting, Edwards was also paid $5,000 in cash for his role in the cocaine escort.  While the exact amount of cocaine to be transported was not specified, the Defendant and Edwards understood that it would be at least 500 grams of cocaine, but not more than two kilograms of cocaine.

On September 16, 2020, the CS and UC (in one car) met with the Defendant and Edwards in a parking lot located in Homestead, Florida.  The Defendant was in one car, and Edwards was in a different car.  The group left the parking lot and drove to a hotel in Homestead to pick up the supposed cocaine.  During that drive, Edwards drove immediately in front of the CS's car, and the Defendant drove immediately behind.  At the hotel, an undercover officer (UC2) was waiting inside with a suitcase containing sham cocaine.  Upon arrival at the hotel, Edwards and the CS entered through the main lobby of the hotel and walked towards the lounge area where UC2 was waiting.  The CS made contact with UC2 and took a seat at the same table.  EDWARDS took a seat at the adjacent table.  The CS then asked UC2 if the "white girls" were there, referring to the suitcase.  UC2 acknowledged that they were.  The CS then got up from the table, took possession of the suit case, and walked out of the hotel.  Edwards got up as the CS took possession of the suit case and followed the CS out of the hotel.  The CS opened the trunk compartment of the CS's vehicle and placed the suit case inside the trunk as Edwards stood next to the CS.

The UC then texted the Defendant the address of the drop off, and the Defendant began to drive towards Aventura, Florida.  The CS's vehicle followed, escorted by Edwards in the rear, and the Defendant immediately to the front.  The three vehicles then traveled on the Florida Turnpike towards the North, and eventually arrived in Aventura.  During that trip, the cars driven by Edwards and the Defendant were immediately in front of and behind the CS's vehicle almost the entire way, in order to serve as an escort for the cocaine.  Upon arrival at the hotel in Aventura, the Defendant

3

was the lead vehicle, so he pulled forward, opened the door of his own car, and kept a look out. The CS exited his/her vehicle, opened the trunk, and retrieved the suitcase of sham cocaine that had been picked up at the hotel in Homestead. The CS was then escorted by Edwards into the hotel lobby. Inside the lobby, the CS met with another undercover officer (UC3), with Edwards seated nearby. The CS provided the suitcase of sham cocaine to UC3. The CS told UC3 that the bag contained the "ladies," and then the CS asked when he/she could expect to be paid. UC3 responded that the CS would be paid next week, maybe Monday. Then the CS and Edwards left the hotel. After leaving the hotel, the CS briefly met with the Defendant and Edwards. The CS thanked them for being professional and, as they began to go their separate ways, said "welcome to the Sinaloa cartel."

The Parties agree that the above facts, which do not include all the facts known to the Government and the Defendant, are sufficient to prove the guilt of the Defendant in the above-referenced matter.

JUAN ANTONIO GONZALEZ
ACTING UNITED STATES ATTORNEY

Date: 4/23/21     By: _____

FREDERIC C. SHADLEY
ASSISTANT UNITED STATES ATTORNEY

Date: 4/23/21     By: _____

DAVID WEINSTEIN, ESQ.
COUNSEL FOR DEFENDANT

Date: 4/23/21     By: _____

RODERICK MICHAEL FLOWERS
DEFENDANT

4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No: 20-cr-20266-PCH

UNITED STATES OF AMERICA,

v.

KEITH MAURICE EDWARDS, JR.,

      Defendant.

_____/

## FACTUAL PROFFER

Defendant, Keith Maurice Edwards, Jr. ("Defendant"), his counsel, and the United States of America agree that, had this case proceeded to trial, the United States would have proven the following facts beyond a reasonable doubt:

During the summer of 2020, a law enforcement confidential source ("CS") met several times with co-defendant Manny Hernandez to discuss activities related to narcotics trafficking and money laundering. The CS presented himself as a cocaine broker and money launderer affiliated with the Sinaloa Cartel. During those meetings, Hernandez explained to the CS that he had access to law enforcement officers who could assist them. On August 18, 2020, the CS asked if Hernandez's law enforcement contact could help the CS by identifying a license plate belonging to a person that owed the CS money. The CS provided Hernandez with the relevant license plate information. Hernandez reached out to Roderick Flowers, an officer with the Miami-Dade Police Department ("MDPD"). Flowers queried the license plate information in a law enforcement database, and then sent that information back to Hernandez, and eventually to the CS.

On August 28, 2020, Hernandez told the CS he wanted to invest in a future load of cocaine. The parties discussed prices and options, and Hernandez eventually settled on investing in a multi-kilogram load of cocaine. During that same meeting, the CS asked if he could use Hernandez's law enforcement contacts to help escort the cocaine load. Hernandez said yes, but the CS would

be required to pay each cop $5,000, and Hernandez would need to be paid $10,000. Hernandez said that he would set up a meeting with the cops.

On September 9, 2020, Officer Flowers met with Hernandez, the CS, and an undercover officer ("UC") at Hernandez's business in Davie, Florida. The meeting had been arranged by Hernandez. During the meeting, the CS thanked Flowers for running the license plate, which Flowers acknowledged. Then, the CS and Flowers discussed how Flowers could help the CS by escorting the transport of the planned load of cocaine. The CS explained that the cocaine would be called "white girls" as a code word. The CS told Flowers that he wanted to move product from one location to another, and that he needed an escort. Flowers asked several questions regarding the logistics of the transport, and suggested that he had a friend – later identified as the Defendant, an MDPD officer – who could help with the cocaine escort. Flowers explained that both he and the Defendant had SWAT training, and so they were qualified to do the cocaine escort. Flowers further explained that he and the Defendant would help the CS create an alibi as to why he was in the area in case something went bad during the cocaine escort. Towards the end of the meeting, the CS paid Flowers $5,000 in cash for agreeing to escort the cocaine load, and the parties decided to set up another meeting involving the Defendant.

On September 14, 2020, the CS and UC met with Hernandez, Flowers, and the Defendant. The meeting took place at Hernandez's office in Davie, Florida. At the beginning of the meeting, the CS asked if the Defendant was a cop, and the Defendant confirmed that he was. The CS then asked whether Flowers and the Defendant were partners, and Flowers confirmed that they were. The CS asked Flowers if the Defendant knew everything, and Flowers responded yes, he did. The CS then told the Defendant that the code word for the cocaine would be "white girls," which the Defendant acknowledged. The CS explained that he would need the Defendant to help with the transport of the "product" from point A to point B, and told the Defendant that he would be paid for his services. According to the CS, he had to move the "product" from Homestead to Aventura.

2

The Defendant told the CS that he knew that what the CS did was illegal, but that it was none of his business and that he was only providing private security for the CS. Eventually, the parties agreed that the product escort would take place on Wednesday, September 16, 2020. During this meeting, the Defendant was also paid $5,000 in cash for his role in the cocaine escort. While the exact amount of cocaine to be transported was not specified, Flowers and the Defendant understood that it would be at least 500 grams of cocaine, but not more than two kilograms of cocaine.

On September 16, 2020, the CS and UC (in one car) met with Flowers and the Defendant in a parking lot located in Homestead, Florida. Flowers was in one car, and the Defendant was in a different car. The group left the parking lot and drove to a hotel in Homestead to pick up the expected cocaine. During that drive, the Defendant drove immediately in front of the CS's car, and Flowers drove immediately behind. At the hotel, an undercover officer (UC2) was waiting inside with a suitcase containing sham cocaine. Upon arrival at the hotel, the Defendant and the CS entered through the main lobby of the hotel and walked towards the lounge area where UC2 was waiting. The CS made contact with UC2 and took a seat at the same table. The Defendant took a seat at the adjacent table. The CS then asked UC2 if the "white girls" were there, referring to the suitcase. UC2 acknowledged that they were. The CS then got up from the table, took possession of the suitcase, and walked out of the hotel. The Defendant got up as the CS took possession of the suitcase and followed the CS out of the hotel. The CS opened the trunk compartment of the CS's vehicle and placed the suitcase inside the trunk as the Defendant stood next to the CS.

The UC then texted Flowers the address of the drop off, and Flowers began to drive towards Aventura, Florida. The CS's vehicle followed, escorted by the Defendant in the rear, and Flowers immediately to the front. The three vehicles then traveled on the Florida Turnpike towards the North, and eventually arrived in Aventura. During that trip, the cars driven by the Defendant and

Flowers were immediately in front of and behind the CS's vehicle almost the entire way, in order to serve as an escort for the cocaine. Upon arrival at the hotel in Aventura, Flowers was the lead vehicle, so he pulled forward, opened the door of his own car, and kept a look out. The CS exited his/her vehicle, opened the trunk, and retrieved the suitcase of sham cocaine that had been picked up at the hotel in Homestead. The CS was then escorted by the Defendant into the hotel lobby. Inside the lobby, the CS met with another undercover officer (UC3), with the Defendant seated nearby. The CS provided the suitcase of sham cocaine to UC3. The CS told UC3 that the bag contained the "ladies," and then the CS asked when he/she could expect to be paid. UC3 responded that the CS would be paid next week, maybe Monday. Then the CS and the Defendant left the hotel. After leaving the hotel, the CS briefly met with Flowers and the Defendant. The CS thanked them for being professional and, as they began to go their separate ways, said "welcome to the Sinaloa cartel."

The Parties agree that the above facts, which do not include all the facts known to the Government and the Defendant, are sufficient to prove the guilt of the Defendant in the above-referenced matter.

JUAN ANTONIO GONZALEZ
ACTING UNITED STATES ATTORNEY

Date: __4/23/2021__          By: _____

FREDERIC C. SHADLEY
ASSISTANT UNITED STATES ATTORNEY

Date: 4/23/21          By: _____

FRANK PRIETO, ESQ.
COUNSEL FOR DEFENDANT

Date: 4/23/21          By: _____

KEITH MAURICE EDWARDS, JR.
DEFENDANT

4